* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with some modifications the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On September 11, 2003, Plaintiff sustained an admittedly compensable injury.
2. Employer/Defendant is UNC Healthcare System.
3. The Third Party Administrator/Defendant is Key Risk Management.
4. Employer/Defendant regularly employed three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
5. The Industrial Commission has jurisdiction over the parties, and all parties have been properly named in this action.
6. The Plaintiff's average weekly wage at the time of injury was $1,206.44, and $674.00 per week is the applicable compensation rate for this claim.
7. The following documents were stipulated into evidence:
 a. Stipulated Exhibit #1: Industrial Commission forms and orders
 b. Stipulated Exhibit #2: Plaintiff's medical records, including additional medical records of Dr. Scott Sanitate and Dr. John Guisto received by cover letter from Plaintiff's counsel dated October 29, 2004.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on October 9, 1967 and was 36 years old at the time of the hearing before the Deputy Commissioner. Plaintiff is originally from the Philippines where she obtained her four-year degree in clinical nursing. She was granted United States citizenship three to four years prior to the hearing. Plaintiff has worked as a Registered Nurse for 18 years, and as a critical care nurse for the last 13 years. Prior to her job at UNC Healthcare System which began in February of 2003, Plaintiff had worked as a critical care nurse at Bellevue Hospital in New York, New York. While in New York, Plaintiff also earned additional continuing educational units in various specialties in critical care nursing.
2. Prior to the work injury that is the subject of this claim, Plaintiff had never suffered a back injury, or chronic pain syndrome, or psychological ailments of any type. Additionally, prior to this claim, Plaintiff had never filed a workers' compensation claim, nor missed any extended periods from work due to disability.
3. Plaintiff moved to Chapel Hill in early 2003 after being hired by UNC Hospitals as a critical care nurse. Plaintiff's job as a staff nurse in the Post-Anesthesia Critical Care Unit included handling and treating patients as they recovered from surgery. She positioned patients so their airway would be protected, monitored their vital signs and medications, and transferred the patients in and out of the unit. Plaintiff's job duties also included handling the critical care overflow. Critical care overflow management required the moving of patients from the critical care facility into the Post Anesthesia Critical Care Unit on a temporary basis. Once a patient had been stable for a particular amount of time, the Plaintiff's duties would include moving the patient back to the step-down room.
4. Plaintiff cared for patients who were in critical condition, and therefore it was required that she be able to rapidly move patients of any size in order to protect their health and to manage their health care.
5. On September 11, 2003, Plaintiff was attempting to move a large patient, weighing approximately 300 pounds, on a Hillrom bed into an elevator. This patient had a tracheotomy and it was of vital importance to conclude the patient's move as quickly as possible. As the Plaintiff was attempting to get the patient onto the elevator, a wheel of the Hillrom bed became stuck in the elevator door. The Plaintiff was working with another nurse whose name is Meredith Moore. The Plaintiff and Nurse Moore urgently attempted to dislodge the bed. As the Plaintiff was pushing and pulling on the bed, she felt a severe pain in her back that radiated up to her neck. Plaintiff reported the injury to her supervisor.
6. Plaintiff was treated at Defendant's Occupational Health Services Department where she was given ibuprofen, and an ice pack and taken out of work for two days. At her follow-up visit at Occupational Health Services on September 15, 2003, Plaintiff complained of pain in her entire back and numbness in her left big toe. Plaintiff was excused from work. She continued to seek treatment at Occupational Health Services on a frequent basis during September and October 2003. An MRI of Plaintiff's spine was taken on September 18, 2003 and showed a disc bulge at L2-L3.
7. Defendant referred Plaintiff to Gary Smoot of Carolina Spine Specialists and scheduled an appointment for October 8, 2003. On October 24, 2003, Dr. Smoot referred Plaintiff to Dr. Jeffrey Siegal for a neurological consultation. Dr. Smoot could not "explain the severity or the extent of Plaintiff's current symptoms based on the results of electrodiagnostic testing or on the two MRI's of the lumbar spine or the MRI of the thoracic spine." He kept Plaintiff out of work and prescribed Percocet. In his November 3, 2003 medical report, Dr. Siegal discussed an EMG performed by Dr. Smoot. Dr. Siegal noted that the nerve conduction studies were abnormal. Dr. Siegal did not believe Plaintiff had any type of peripheral polyneuropathy and his impression was that Plaintiff's symptoms were out of proportion to any objective abnormalities seen by examination and testing and that Plaintiff's reported symptoms were strongly suggestive of secondary gain issues. On November 4, 2003, Dr. Smoot stated in a work status note that Plaintiff could return to work effective November 4, 2003 with no restrictions. Due to her dissatisfaction with the lack of treatment offered by Dr. Smoot and Dr. Siegal, Plaintiff requested an evaluation with Dr. Craig Derian.
8. Dr. Derian saw Plaintiff on November 20, 2003, at which time he was of the opinion that no surgical intervention was necessary. He further opined that Plaintiff could work in a sedentary to light duty capacity, lifting no greater than 20 pounds, and that Plaintiff should be allowed frequent position changes from sitting to standing and walking as necessary.
9. Defendant transferred Plaintiff's care to Dr. Scott Sanitate who first saw her on November 17, 2003. Plaintiff complained of low back pain radiating to her right lower extremity. She described her pain as level 6 out of 10, with 10 being the worst. In his deposition testimony describing his first evaluation of the Plaintiff, Dr. Sanitate testified that the abnormal EMG findings by Dr. Smoot would be consistent with nerve irritation. Additionally, Dr. Sanitate testified that the positive Patrick's maneuver could also be consistent with nerve irritation or neuropathy in the lumbar spine.
10. On November 17, 2003, Dr. Sanitate gave the Plaintiff work restrictions of no lifting greater than 25 pounds and no patient lifting. On December 1, 2003, Dr. Sanitate gave Plaintiff restrictions of no patient lifting. On December 15, 2003, Dr. Sanitate gave Plaintiff restrictions of no unassisted patient lifting.
11. On January 21, 2004, Plaintiff returned to Dr. Sanitate. On that occasion she complained of low back pain with right lower extremity radiation. Plaintiff reported the pain as 5 out of 10. Plaintiff was currently on Vioxx, Flexeril and a Lidoderm patch. Dr. Sanitate's January 21, 2004 work status note stated that the Plaintiff was able to return to full duty work on January 26, 2004. He gave no specific restrictions. However, in the category of "other" he wrote, "will call (Heather Morton) this week to see if light duty available." Plaintiff was given a follow-up appointment with Dr. Sanitate for February 3, 2004. In his treatment record dated January 21, 2004, Dr. Sanitate indicated that he gave Plaintiff injections at T12-L1 and at L1-L2. Under "comments," he wrote, "Ms. C will call Heather Morton [.] If restricted activity unavailable — trial return to work [without] restrictions Monday 1/26/04."
12. Dr. Sanitate testified that he preferred having Plaintiff return to work with restrictive duty, but if no restricted duty work was available, he sent her back for a trial return of full duty work. Dr. Sanitate could not fully explain how Plaintiff would be able to perform her full duty activities as a critical care nurse while taking the drug, Flexeril, which has potential sedating effects. Dr. Sanitate indicated, when asked during his deposition, that he assumed Plaintiff would take the medication at night, even though he prescribed one to two doses per day.
13. After her January 21, 2004 visit with Dr. Sanitate, Plaintiff's understanding was that she was to return to light duty work with no patient lifting and no lifting greater than 25 pounds. Based on the greater weight of the evidence, Dr. Sanitate's return to work instructions were ambiguous and Plaintiff's understanding that she was released to return to light duty work was reasonable.
14. Plaintiff reported to work and attempted to work a full shift on January 28, 2004. In reference to Plaintiff's return to work status, Heather Morton, the Workers' Compensation Manager for UNC Healthcare System, understood that Plaintiff had restrictions of no pushing, no pulling, no patient lifting and no transferring patients. Ms. Morton informed the Plaintiff's direct supervisor, Lori Chrisco, of these work restrictions for Plaintiff. Ms. Chrisco admitted that she might not have told the charge nurse that Plaintiff had work restrictions on the night Plaintiff attempted to return to work on January 28, 2004. The testimony of Lori Chrisco and Heather Morton was consistent in that they both believed that Plaintiff was returning to light duty work and they were not certain whether the Plaintiff's supervisor on the day of her return to work had been informed that she should be placed on light duty status. Heather Morton testified that she prepared a letter with a written job description, but she never sent it to Plaintiff prior to her return to work because Ms. Morton was absent from work due to snow. Ms. Morton's letter had restrictions for Plaintiff of no patient lifting and no patient transport. Ms. Morton testified that she intended to place Plaintiff on restricted duty because, "It made the best sense with someone who had not been at work for a while."
15. During her shift on January 28, 2004, the Plaintiff was uncomfortable and in pain. She needed to change positions approximately every 15 minutes. During the course of the shift, Plaintiff was given responsibility for admission of a ten-month old baby who was heavy in weight. Emergency room procedures had to be performed on the child, and the child went into respiratory arrest. The child was stabilized with the assistance of four other workers, who assisted Plaintiff with her lifting responsibilities. During the Plaintiff's testimony recounting this incident, the Deputy Commissioner observed that Plaintiff became very upset and expressed great concern about her ability to work, considering the level of responsibility she has as a critical care nurse and the disabling pain she suffers due to her compensable injury. By the end of the shift on January 28, 2004, Plaintiff was in excruciating pain in her lower back that radiated to both her upper and lower extremities. Plaintiff's husband was called to take her home. She was taken out of the facility in a wheelchair. Plaintiff called Lori Chrisco and Heather Morton to report the pain she experienced while trying to work. Thereafter, Plaintiff informed Heather Morton that her condition had not improved and she physically was not able to return to work. Plaintiff spoke to Heather Morton about having her compensation reinstated and was advised to get a lawyer. After Plaintiff retained a lawyer, Heather Morton asked Plaintiff not to call her because she was represented by counsel and Ms. Morton did not want to give legal advice. The job Plaintiff was assigned upon her return to work on January 28, 2004 was unsuitable and Plaintiff was justified in her refusal to return to the job duties of a critical care nurse.
16. On January 30, 2004 the Plaintiff returned to Dr. Sanitate. Plaintiff had called Dr. Sanitate's office numerous times complaining of the continuing pain she was experiencing since her last visit on January 21, 2004. Plaintiff believed that the injections she received in the interspinous space at L1-L2 and T12-L1 had caused her severe pain.
17. Dr. Sanitate ordered a bone scan, reinstated her restriction of no patient lifting, and found Plaintiff able to return to modified work. Plaintiff was again seen by Dr. Sanitate on February 3, 2004, and on that occasion his restriction was also no patient lifting. He prescribed a Lidoderm Patch, Ultracet, Vioxx and Flexeril.
18. Plaintiff returned to Dr. Sanitate on February 13, 2004, at which time a prepared Industrial Commission Form 28U was presented to him for his signature. However, neither through Dr. Sanitate's notes, nor in his deposition testimony could he recall the Form 28U. It is Plaintiff's recollection that Dr. Sanitate refused to sign the form. On February 13, 2004, Dr. Sanitate revised the Plaintiff's restrictions to no frequent lifting greater than 10 pounds and no lifting at all over 25 pounds. He kept in effect the restriction of no patient lifting. Dr. Sanitate also gave the restriction of avoiding repetitive flexion/extension of the lumbar spine and further recommended that the Plaintiff proceed with a course of physical therapy/TENS unit. As of her March 16, 2004 visit with Dr. Sanitate, Plaintiff did not have the prescribed TENS unit. On April 6, 2004, Plaintiff reported some relief from use of the TENS unit.
19. Dr. Sanitate continued to treat Plaintiff through June 23, 2004. On that occasion Plaintiff's restrictions still included no patient lifting. Over the course of treatment, Plaintiff developed allergies to several medications. Dr. Sanitate suspected that psychosocial stress or possibly some underlying neurogenerative process could be the cause of some of Plaintiff's symptoms. Dr. Sanitate was of the opinion that biofeedback might be of some assistance to Plaintiff; however, Dr. Sanitate had no further treatment that he could offer. He suggested that Plaintiff contact her employer to see if they offered biofeedback.
20. Dr. Sanitate expressed an opinion to a reasonable degree of medical certainty, and the Full Commission so finds, that Plaintiff's fascial pain syndrome, as well as her right lower extremity heaviness, was caused by her compensable work injury of September 11, 2003.
21. The Executive Secretary's Office denied Plaintiff's request that Defendant be compelled to authorize and pay for an independent medical examination (IME) as of April 12, 2004. On August 23, 2004, the Plaintiff, at her own expense, underwent a one-time evaluation with Dr. John Guisto of Plum Spring Clinic in Chapel Hill. Dr. Guisto is board certified in physical medicine and rehabilitation. Plaintiff was justified in seeking further evaluation of her condition since Dr. Sanitate had no further treatment to offer and her condition was still disabling. Dr. Guisto's impression after his examination on August 23, 2004 and review of Plaintiff's prior diagnostic tests was that Plaintiff suffered from lumbar disc displacement, chronic pain syndrome and some sort of peripheral neuropathy. Dr. Guisto expressed an opinion to a reasonable degree of medical certainty and the Full Commission finds as fact that the Plaintiff would not have been able to perform her regular duties as a critical care nurse at any time following her work injury and that Plaintiff's future employment would require modifications.
22. Dr. Guisto further opined and the Full Commission finds as fact that since Plaintiff had no previous workers' compensation injury and no previous psychological problems, Plaintiff's chronic pain syndrome and the psychological factors accompanying her physical condition were caused by the work injury of September 11, 2003.
23. The examination Dr. Guisto provided to Plaintiff was reasonably required to effect a cure, provide relief and/or lessen Plaintiff's period of disability. He is of the opinion that he can offer treatment to Plaintiff which would tend to lessen her disability. These treatments would include osteopathic manipulation treatments, medical counseling, and physical therapy or myofascial treatment.
24. Based on the greater weight of the evidence, Plaintiff is incapable due to her compensable injury of returning to her job duties as a critical care nurse. Plaintiff may be able to perform light duty work involving no patient lifting and restricted bending and pulling if appropriate accommodations are made. As of the date of hearing before the Deputy Commissioner, Plaintiff had not returned to work after her failed trial return to work and Defendant-employer had not offered her any light duty work within her restrictions. Defendant-employer contends, however, that they have light duty work that they could offer Plaintiff.
25. Defendant terminated Plaintiff's compensation effective January 28, 2004. Defendant filed with the Industrial Commission both a Form 28 and a Form 28T dated February 2, 2004 stating Plaintiff returned to work on January 28, 2004. At the time Defendant filed these forms, Defendant was aware that Plaintiff's attempt to return to work was unsuccessful and that Dr. Sanitate had reinstated work restrictions of no patient lifting. Defendant has refused to reinstate benefits even after the decision of the Deputy Commissioner awarding Plaintiff continuing temporary total disability compensation filed on July 20, 2005.
26. Despite the ambiguity in Dr. Sanitate's return to work note, Plaintiff was only capable of returning to restricted duty work on January 28, 2004 and her return to work constituted a trial return to work. Plaintiff's trial return to work on January 28, 2004 was an unsuccessful trial return to work within the meaning of N.C. Gen. Stat. § 97-32.1. Plaintiff reported the unsuccessful attempt to return to work to the Defendant-employer and to her treating physician, Dr. Sanitate. Defendant had immediate actual knowledge of the difficulties Plaintiff experienced during her attempt to return to work, and was aware that the trial return to work was unsuccessful. Plaintiff's benefits should have been reinstated effective January 29, 2004.
27. Since January 28, 2004, due to the disabling nature of her compensable work injuries, the Plaintiff has been unable to earn wages in her job as a critical care nurse. Lori Chrisco testified that PAC-U is busy and she needed nurses who can do transports. She can find some temporary work for Plaintiff and there is daytime work such as doing chart review, but the work is not permanent. Heather Morton testified, however, that she is the workers' compensation administrator for Defendant and there are nursing jobs available doing just paperwork; but as for the availability of a specific job, she would have to ask nursing employment. Defendant has not offered vocational assistance to Plaintiff in locating a job within her restrictions with Defendant-employer. However, Heather Morton did testify that she had initiated contact with Plaintiff's attorney about a month prior to the hearing before the Deputy Commissioner and they had discussed a return to work for Plaintiff, but no return to work date was established. Ms. Morton believed that Defendant could accommodate Plaintiff's restrictions. Plaintiff is still an employee of Defendant. Plaintiff has not refused suitable employment. Therefore, it would appear from the greater weight of the evidence that there may be a communication break-down between the parties.
28. Plaintiff has not yet reached maximum medical improvement from all of her conditions resulting from her compensable injury by accident of September 11, 2003 and is in need of additional medical treatment to effect a cure, provide relief, and/or lessen her disability, including the treatment recommended by Dr. Guisto.
29. As a result of her compensable injury, Plaintiff remains temporarily totally disabled.
 * * * * * * * * * * *
Based on the foregoing Findings of Fact and Conclusion of Law, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident, arising out of and in the course of her employment on September 11, 2003, resulting in a back injury. N.C. Gen. Stat. §97-2(6).
2. Plaintiff has not yet reached maximum medical improvement from all of her compensable conditions resulting from her September 11, 2003 injury by accident.
3. Despite Plaintiff's failure to file a Form 28U, pursuant to North Carolina Industrial Commission Rule 404(a)(2) the Plaintiff's trial return to work was unsuccessful on January 28, 2004 within the meaning of N.C. Gen. Stat. § 97-32.1. When Plaintiff returned to work, she was unable to continue. There is no competent evidence that Defendant served Plaintiff or Plaintiff's counsel with a Form 28T within the time limits prescribed by North Carolina Industrial Commission Rule 404(a)(1). Defendant was obligated to reinstate Plaintiff's compensation after the trial return to work failed. The obligation to reinstate compensation is not dependent on Plaintiff's filing of a Form 28U. N.C. Gen. Stat. § 97-32.1.Burchette v. East Coast Millwork Dist., Inc. 149 N.C. App. 802;562 S.E.2d 459 (2002).
4. Plaintiff is entitled to reinstatement of temporary total disability compensation at the rate of $674.00 per week from January 29, 2004 to the present and continuing until further Order of the Industrial Commission. Plaintiff has proven she is temporarily totally disabled as she cannot perform her prior job duties as a critical care nurse, her physical restrictions resulting from her injury severely limit her job opportunities and her chronic pain has caused psychological problems which also limit her ability to work. Since Plaintiff has not reached maximum medical improvement, is still an employee of Defendant, had an unsuccessful trial return to work and discussions about her returning to work have been initiated; Plaintiff is entitled to continuing temporary total disability compensation. N.C. Gen. Stat. § 97-29.
5. As a result of her compensable injury by accident, Plaintiff is entitled to receive all reasonably necessary medical treatment for her injuries for so long as such treatment tends to effect a cure, provide relief and/or lessen her disability. N.C. Gen. Stat. § 97-25.
6. Dr. John Giusto shall be designated as Plaintiff's primary treating physician, as Dr. Sanitate indicated he has no further treatment to offer Plaintiff. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant shall pay to Plaintiff, subject to an attorney's fee approved herein, temporary total disability compensation at the rate of $674.00 per week from January 29, 2004 to the date of hearing before the Deputy Commissioner and continuing until further Order of the Industrial Commission. All benefits that have accrued to date shall be paid in one lump sum.
2. Defendant shall pay all expenses Plaintiff has incurred for medical treatment resulting from her compensable injury by accident of September 11, 2003, and shall continue to provide future payment of expenses for medical treatment for Plaintiff's compensable injuries, for so long as the medical treatment is designed to effect a cure, provide relief and/or lessen Plaintiff's period of disability. Defendant shall specifically authorize payment for Dr. John Giusto's medical treatment, as he is hereby designated as Plaintiff's primary treating physician.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the sums due Plaintiff in Paragraph 1 of this Award is approved for Plaintiff's counsel and shall be paid as follows: Defendant shall pay directly to Plaintiff's counsel twenty-five percent (25%) of the lump sum compensation due Plaintiff, and thereafter, Defendants shall pay directly to Plaintiff's counsel every fourth check due the Plaintiff.
4. Defendant shall pay the costs, including expert witness fees to Dr. Guisto in the amount of $250.00 and Dr. Sanitate in the amount of $375.00.
This the __ day of June, 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER